PITTMAN, Judge.
 

 M. Travis Lindenmuth (“the father”) appeals from a judgment modifying his child-support obligation. The father and Paula C. Lindenmuth (“the mother”) were divorced pursuant to an agreement that was incorporated into a divorce judgment entered on December 31, 2001. During the course of the parties’ marriage, they had three children: a daughter (“the eldest child”), who was born in March 1988; another daughter (“the middle child”), who was born in February 1990; and a son (“the youngest child”), who was still a minor at the time of the modification hearing.
 
 [1]
 
 One of the agreed provisions in that divorce judgment was “[tjhat all reason
 
 *269
 
 able college expenses for the parties’ children shall be equally divided between the parties.” Subsequently, in June 2007, the parties entered into an agreement, which was subsequently incorporated into a modification judgment, modifying the divorce judgment that reduced the father’s monthly child-support obligation to $608.80 because the eldest child had reached the age of majority; the parties also agreed that the father and the mother would “each be responsible for one-half (½) of college books and tuition expenses” for the eldest child after all grants and scholarships had been applied to offset the gross college expenses. In addition, the father agreed to keep the eldest child as a dependent on his medical insurance “as long as [the eldest child wa]s currently enrolled in college as a full-time student.” The language of the agreement specified that the father would be responsible for paying the listed expenses “as long as the child is enrolled as a full-time student in a state, in-state college or university, maintains a ‘C’ average and provides her grades to the [father] within 10 days of ... receipt of same.”
 

 In March 2009, the father filed a modification petition in which he sought a reduction in his child-support obligation because the middle child had reached the age of majority during the previous month. The mother answered and filed a counterclaim in which she requested an award of post-minority support for the middle child and an adjudication that the father should pay the mother for “room and board” because both the eldest child and the middle child had been living at the mother’s home to obviate paying the cost of room and board on campus.
 

 On May 21, 2009, the trial court conducted an ore tenus proceeding during which both parties, the eldest child, the middle child, and the father’s wife testified.
 
 [2]
 
 The bulk of the mother’s testimony concerned her normal living expenses and the percentage attributable to each of the three children living in that household. The mother’s testimony indicated that, excluding housing and automobile-maintenance costs, she spent between $2,000 and $3,000 per month in food, toiletries, laundry supplies, and the like. The mother, dividing the lower expense amount by four, opined that the father should reimburse her monthly for roughly $1,000 in saved room- and-board costs for the two college-aged children.
 

 The college-aged children testified concerning the colleges they were attending, their courses of study, and the cost of gasoline to commute to and from school four days a week. They also testified that they did not attend college in the summer, but worked summer jobs that helped defray their personal expenses during the school year. In addition, the eldest child admitted that, for the first time since beginning college, she had earned a semester grade-point average (“GPA”) that was below a ‘C’ level during the immediately preceding semester.
 

 The father stated that he had understood the June 2007 agreement to specify his responsibilities for the eldest child’s college expenses; however, he contended that the parties had never entered into a similar arrangement regarding the middle child. In particular, he noted that the agreement omitted room-and-board costs as part of his responsibility and that, now that the eldest child’s most recent semes
 
 *270
 
 ter’s GPA had dropped below a “C,” he was not responsible for any further educational expenses on her behalf. The mother testified that she had understood that the June 2007 agreement specifically related to only the eldest child, but she contended that the provision in the original divorce judgment requiring the mother and the father to “equally divide” the reasonable college expenses for their children had not been modified.
 

 On May 26, 2009, the trial court entered a judgment that modified the father’s monthly child-support obligation to $407 a month for the youngest child. Regarding the parties’ responsibility to pay for the children’s “reasonable college expenses,” the trial court concluded “that a sum of $400 per month per child in college would be a reasonable allocation of living and transportation expenses ... over and above tuition and books.” That amount was to be shared equally by the parents, so that the total amount owed by the father in addition to child support was $400 (one half of each child’s monthly living and transportation expenses). The judgment ordered both parties to contribute those amounts “for the [college-aged children] while they are in college and maintaining a ‘C’ average for up to a four year degree.” In addition, the judgment conditioned the father’s obligation to pay any of the college expenses for the following semester (excluding summer school unless a child was enrolled therein) upon his having received a copy of the children’s grades within 20 days of the end of the previous semester.
 

 The mother filed a postjudgment motion to request that the children be given 30 days to forward their grades to the father in order to allow for school and postal delays in supplying that information. The trial court amended the judgment to so read on May 26, 2009. The father filed a postjudgment motion challenging the entire judgment, and, following a hearing on that motion, the trial court denied the father’s motion and the father timely appealed. The father contends that the trial court modified the judgment that was based upon the parties’ June 2007 agreement without having the jurisdiction to do so, that the trial court erroneously ordered the father to pay for the middle child’s college expenses because the June 2007 agreement did not address postminority support as to that child and because the child had attained the age of majority before postminority support was requested, and that the trial court erred in continuing the father’s obligation to pay for the eldest child’s college expenses in the face of the eldest child’s admission at trial that her grades for the most recent semester had fallen below a “C” average.
 

 Because the trial court entered its judgment in this case after considering evidence presented ore tenus, we presume any factual findings based on that evidence to be correct, unless those findings are unsupported by the evidence so as to be plainly and palpably wrong.
 
 Simpkins v. Simpkins,
 
 595 So.2d 493, 495 (Ala.Civ.App.1991). Furthermore, as in all cases in which a trial court fails to make specific findings of fact, we “ “will assume that the trial judge made those findings necessary to support the judgment.’”
 
 Fielding v. Fielding,
 
 24 So.3d 468, 472 (Ala.Civ.App.2009) (quoting
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A.,
 
 608 So.2d 375, 378 (Ala.1992)).
 

 Initially, we note that
 

 “the principles of
 
 Ex parte Bayliss,
 
 550 So.2d 986 (Ala.1989), do not generally apply in the context of a parent’s contractual undertaking to provide postmi-nority support to minor children that is incorporated into a binding judgment. As we ‘specifically pointfed] out’ in
 
 Simpkins v. Simpkins,
 
 595 So.2d 493,
 
 *271
 
 495 (Ala.Civ.App.1991), which involved a petition to modify a contractual undertaking similar to that entered into by the parties in this case in 2001, ‘this is
 
 not
 
 a
 
 Bayliss
 
 fact situation or proceeding.’”
 

 Thomas v. Campbell,
 
 960 So.2d 694, 697 (Ala.Civ.App.2006). Instead, a trial court’s consideration of a modification request is governed by the principle that “an agreement between the parties fixing child support payments, when incorporated into a judgment, becomes merged into the judgment and thereby loses its contractual nature to the extent that a court of equity has the power to modify the decree when changed circumstances so justify.”
 
 Ralls v. Ralls,
 
 383 So.2d 857, 859 (Ala.Civ.App.1980) (overruled on other grounds by
 
 Ex parte Bayliss,
 
 550 So.2d at 994);
 
 [3]
 

 see also Wesley v. Wesley,
 
 627 So.2d 441, 444 (Ala.Civ.App.1993) (postminority-child-support awards may be modified just as any other award of child support may be modified);
 
 see also Dunigan v. Bruning,
 
 64 So.3d 645 (Ala.Civ.App.2010).
 

 Thus, the father’s contention that the trial court in this case did not have jurisdiction to modify the 2007 modification judgment incorporating the June 2007 agreement of the parties is without merit. The father himself sought a modification in this case and alleged a change in circumstances, namely that the middle child had reached the age of majority. Because the parties’ June 2007 agreement as it pertained to child support had been incorporated into a modification judgment specifying the father’s child-support obligations and the father’s responsibility to pay one half of the eldest child’s “college books and tuition expenses,” that judgment was subject to further modification upon proof of changed circumstances.
 
 See Ralls
 
 and
 
 Wesley, supra.
 

 Regarding the father’s contention that the mother, on behalf of the middle child, did not properly seek
 
 Bayliss
 
 support before the middle child attained the age of majority, we note again that the postminority support in this case does not arise from an application of
 
 Bayliss
 
 and its progeny.
 
 See Thomas
 
 and
 
 Simpkins, supra.
 
 The parties’ 2001 divorce judgment contained the agreed language “[t]hat all reasonable college expenses for the parties’ children shall be equally divided between the parties.” The mother’s counterclaim seeking interpretation of the parties’ duties to divide all the children’s “reasonable college expenses” in light of the fact that the middle child had attained 19 years of age and had become a college student was not subject to the strictures contained in
 
 Bayliss.
 
 Thus, the father’s reliance on
 
 Ex parte Barnard,
 
 581 So.2d 489 (Ala.1991), which involved a
 
 Bayliss
 
 situation, is misplaced because that case is inapplicable to facts presented here.
 

 The father also tries to avoid an obligation to pay for a portion of the middle child’s college expenses by pointing out that the
 
 2007 modification judgment
 
 had addressed postminority support
 
 only
 
 for the eldest child; however, that fact actually supports the trial court’s conclusion that the 2007 modification judgment dealt only with the eldest child and did not amend or otherwise negate the agreed provision in the original divorce judgment addressing the parties’ responsibilities to defray the “reasonable college expenses for the parties’ children.” Just as the father contends, albeit to convince this court of error below, the parties competently and clearly
 
 *272
 
 specified the terms of the divorce judgment just as much as they later specified the provisions regarding the eldest child’s college expenses contained in the modification judgment.
 

 We have previously determined that an agreement between parents to pay postmi-nority support that is entered after a child reaches the age of majority and that is incorporated into a divorce judgment is enforceable even though a modification petition to enforce the agreement was not filed during the child’s minority.
 
 See Jackson v. Nelson,
 
 686 So.2d 338, 339 (Ala.Civ.App.1996). In
 
 Jackson,
 
 the parties jointly filed an agreement to pay postmi-nority support after the child had reached the age of majority, but this court concluded that the agreement was nonetheless enforceable.
 
 Jackson,
 
 686 So.2d at 339.
 

 The facts in this case even more strongly support the trial court’s decision to enforce the parties’ postminority-support agreement. In this case, the parties jointly agreed to the postminority-support language well before any of the children had reached the age of majority, and that agreement was incorporated into the parties’ divorce judgment at their mutual request. We think it disingenuous for the father to now assert that the provisions of the parties’ divorce judgment no longer apply, thus relieving him of the obligation to assist in paying for the middle child’s college education.
 
 Compare Godwin v. Davis,
 
 56 So.3d 646 (Ala.Civ.App.2010) (trial court erred in ordering father to pay postminority support for child when mother failed to file her petition for postminority support before child attained the age of 19 and father never agreed to make support payments that he was not required to make under the divorce judgment and he did not voluntarily agree to pay postminority support). We cannot conclude that the trial court erred to reversal in its decision to enforce the parties’ divorce judgment regarding payment of college expenses as to one of the children left unaddressed in the 2007 modification judgment.
 

 The father also contends that the trial court erred in continuing his postminority-support obligation as to the eldest child in light of that child’s admission of having received semester grades below a “C” average. The father relies solely on
 
 Taylor v. Taylor,
 
 991 So.2d 228, 235 (Ala.Civ.App.2008),
 
 [4]
 
 to support his contention that he should not be required to pay any further postminority-educational costs for the eldest child. We disagree.
 

 In cases involving requests to establish or modify a postminority-support award governed by
 
 Bayliss,
 
 this court has held that a trial court must set reasonable limitations on the parent’s responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent.
 
 See Manring v. Manring,
 
 744 So.2d 919, 922 (Ala.Civ.App.1999);
 
 Hocutt v. Hocutt,
 
 591 So.2d 881, 882 (Ala.Civ.App.1991); and
 
 Kent v. Kent,
 
 587 So.2d 409, 412 (Ala.Civ.App.1991). Those limitations have usually included “ ‘ “(1) limiting the support to a reasonable time period, (2) requiring the child to maintain at least a ‘C’ average, and (3) requiring the child to be enrolled as a fulltime student.” ’ ”
 
 Manring,
 
 744 So.2d at 922 (quoting
 
 Ullrich v. Ullrich,
 
 736 So.2d 639, 643 (Ala.Civ.App.1999), quoting in turn
 
 Bahri v. Bahri,
 
 678 So.2d 1179, 1181 (Ala.Civ.App.1996));
 
 see also Taylor,
 
 991 So.2d at 235; and
 
 Penney v. Penney,
 
 785 So.2d 376, 379 (Ala.Civ.App.2000).
 

 
 *273
 
 In this case, however, as noted previously, the parties’ obligation to pay postmi-nority support was not governed by
 
 Bay-liss
 
 principles but was stipulated in an agreement that was incorporated into the parties’ divorce judgment. The 2007 modification judgment added the following specific language pertaining
 
 only
 
 to the eldest child and conditioning the payment of college expenses for “as long as the child is enrolled as a full-time student in a state, in-state college ok university,
 
 maintains a ‘C’ average
 
 and provides her grades to the [father] within 10 days of ... receipt of same” (emphasis added). The father contends that because the eldest child earned a semester GPA below a “C” average, he is no longer responsible for payment of any further postminority support for that child. Although we can find no cases supporting the father’s premise that once a child in college has suffered one semester of grades below a “C” average a postmi-nority-support award necessarily must terminate, we will not end the inquiry there.
 

 As best we can discern, this is an issue of first impression in Alabama. Although there are numerous cases regarding the enforcement of differently worded agreements to pay, or judgments requiring payment of, postminority support, we can find no definitive statement regarding the definition of the language used by the parties in the agreement at issue in this case. A number of reported cases reference a
 
 cumulative
 
 GPA of not less than a “C” average in order to receive postminority support.
 
 See, e.g., Penney,
 
 785 So.2d at 381;
 
 Murrah v. Turnipseed,
 
 578 So.2d 1340, 1341 (Ala.Civ.App.1991); and
 
 Thrasher v. Wilburn,
 
 574 So.2d 839, 840 (Ala.Civ.App.1990). Other cases merely use language similar to that used by the parties in this ease,
 
 ie.,
 
 for a student to “maintain a ‘C’ average.”
 
 See, e.g., Dunigan v. Bruning,
 
 64 So.3d at 647;
 
 Ryland v. Ryland,
 
 12 So.3d 1223, 1236 (Ala.Civ.App.2009); and
 
 Waddell v. Waddell,
 
 904 So.2d 1275, 1281 (Ala.Civ.App.2004).
 

 Although this court reversed a trial court’s attempt to interpret an unambiguous postminority-support provision in
 
 Amie v. Conrey,
 
 801 So.2d 841 (Ala.Civ.App.2001), the trial court in this case did not state any express findings of fact or conclusions of law but ordered the mother and the father to continue equally splitting the two college-age children’s educational costs. Because we must assume that the trial court made those findings necessary to support its decision, we conclude that the trial court must have determined that the term “maintains a ‘C’ average” in its 2007 modification judgment refers to a
 
 cumulative
 
 GPA, which the mother stated was above a “C” average.
 
 [5]
 
 Moreover, trial courts have the power to construe the terms of their judgments.
 
 See, e.g., Ex parte Littlepage,
 
 796 So.2d 298, 301 (Ala.2001), and
 
 Hammock v. Hammock,
 
 867 So.2d 355, 358 (Ala.Civ.App.2003);
 
 see also Long v. Long,
 
 45 So.3d 365, 367-68 (Ala.Civ.App.2010). We cannot conclude that the trial court acted outside its discretion when it interpreted the phrase “maintains a ‘C’ average” to reflect the eldest child’s overall, aggregate, or cumulative success in the chosen college curriculum. We do not perceive justice in the father’s premise that if a child in college has one “bad” semester, all postminority educational support should necessarily end. Further, because we conclude that the trial court in this case could properly read its modification judgment incorporating the parties’ June 2007 agreement to require the eldest
 
 *274
 
 child to maintain a GPA of “C” or better as requiring the maintenance of an overall “C” GPA, we decline to reverse the trial court’s judgment on that ground.
 

 The trial court’s judgment is due to be affirmed.
 

 AFFIRMED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Because the parties agreed on the record that the youngest child was still a minor, the record does not reflect that child’s birthdate.
 

 [2]
 

 . The father’s wife testified that she had attempted to obtain through her employer a full scholarship for the middle child, but that that effort had failed because the mother had refused to send income information to the father's wife for submission with the application.
 

 [3]
 

 . We note that, to the extent that
 
 Ralls
 
 held that "a court does not have the power, in the absence of an agreement, to order a parent to support an adult child,” 383 So.2d at 859,
 
 Bayliss
 
 expressly overruled
 
 Ralls. Bayliss,
 
 550 So.2d at 994.
 

 [4]
 

 . We note that
 
 Taylor, supra,
 
 involved a parent's obligation to provide postminority support pursuant to
 
 Bayliss.
 

 [5]
 

 . We note that the eldest child's college transcript was not included as part of the record on appeal.